I gather counsel is on the phone line? Yes. Good morning. We'll hear United States v. Fasten. And you can begin, Ms. Smith. Thank you. May it please the court, can you hear me okay? Yes, we can. Okay, great. It's a bit loud. You could move maybe an inch further back from the microphone and we'll hear you fine. Okay, thank you. May it please the court, Robin Smith, for appellant to v. Fasten. Under Federal Rule of Criminal Procedure 32E, the probation officer must give the pre-sentence report to the defendant, the defendant's attorney, and the attorney for the government at least 35 days before sentencing unless the defendant waives the minimum period. There's no dispute that Mr. Fasten himself did not receive the pre-sentence report 35 days before the sentencing. And the error is not harmless. It affects Mr. Fasten's substantial rights because there were discrepancies in the discovery that Mr. Fasten was trying to bring to the attention of the court. The discrepancies, basically the situation was that a cookie of cocaine was recovered and loose amounts of cocaine were recovered inside the apartment that Mr. Fasten was found sleeping in. The cookie at trial was described as being recovered from a pair of shorts on the floor next to a bed he was sleeping on without clothes on. And the loose cocaine was recovered in a cabinet in the kitchen. That was what was described at trial. At trial, the cookie was found to weigh 34 grams of cocaine base and the loose amounts were 18 grams, and that was the amount that was alleged at trial to be in the kitchen. The reason this is important . . . Let me ask you this, and this is Judge Jacobs. You're saying this in aid of the argument that the five-day deficit was not harmless, but the counsel for your client had it for months before sentencing and surely knew the circumstances of the case. It was subject to a prior appeal, and Mr. Fasten could surely contact his lawyer if he had any additional concerns. I'm having trouble seeing what the harm is. Well, he did tell his attorney, and his attorney described to the court what Mr. Fasten's claim was at sentencing. I cited in the brief . . . It's between the appendix on page 38 and 39 of Appellant's Appendix. The attorney describes to the district court that Mr. Fasten believes that the amounts were switched, and the attorney says that he thinks that this is a proper issue for a 2255. But what's troubling from our perspective is that the attorney had the discovery and had these discrepancies before him and didn't tell the court that. And then when the court was asking the parties, is there any evidence of this switching? The court just assumed there was no evidence of switching. The court said there's no evidence of switching, and Mr. Fasten's attorney didn't say anything. And in fact, the government said there's nothing in the record that supports anything about switching. This is on page 40 of the appendix, and presumably I get to give him credit. Maybe he's referring to the trial record, and that's correct. But all of the discovery materials from the report of investigation, the affidavit in support of the complaint, the detention hearing, all of these reports and transcripts from right after the arrest have the cocaine that gives Mr. Fasten a mandatory minimum sentence of 10 years in the other room that he wasn't arrested in. So it's important, and Mr. Fasten was trying to bring this to the attention of the district court. May I interrupt you, Judge Radji? I come to the case a little later than my two colleagues on this panel, but you had a jury finding at trial that 28 or more grams were involved in this case, right? Yes, that's correct. So there was no ability to argue in terms of a sentencing proceeding that less than 28 grams were attributable to your client, or am I missing something? Well, the jury found that based upon... The jury found it, and the Second Circuit found that there was sufficient evidence to support that. So I'm not sure how either of those matters get re-litigated on sentencing, and that's at least one of the ways in which I'm having trouble finding how the five-day delay prejudiced your client. So help me out. Certainly, Your Honor. And Judge LaValle, if you would add in answering Judge Radji's question as part of it, what would you argue? What would you say to the district judge if we order a resentencing now? What would you say to the district judge that would lead to a more favorable sentence? Okay. Thank you, Judge LaValle. With respect to Judge Radji's question, why did it matter? It mattered because Mr. Faison's attorney did not cross-examine any of the witnesses about these discrepancies. That's a challenge to the conviction, right? That's a challenge to the conviction. You couldn't have challenged that at sentencing. This was remanded purely for purposes of resentencing after a finding that there was sufficient evidence to support the jury verdict. There was sufficient evidence to support the jury's verdict. Based upon the evidence that was presented at trial, I'm not disputing that. And so on resentencing, it's Judge LaValle's question. If we remand for you to get the pre-sentence report and argue whatever it was you would argue, what would it be? Because I guess what I'm suggesting to you is what you're implying to us, which is that the conviction can't stand, is not something you could have argued on remand for resentencing. Technically, from the appellate court's perspective, I agree with Your Honor. But we believe that if the judge who was asking the parties at the resentence, is there any evidence of switching, and all the parties who knew about it, Mr. Faison's attorney and the government's attorney, should have known based on the discrepancies in the transcripts and the police reports. The judge asked, is there any evidence of what Mr. Faison is saying? And Mr. Faison's attorney said, this is proper for 2255. And the government stayed silent, in fact said, no, there's no evidence of this. And it's not true. It was technically, yes, it wasn't in the record, the trial record, but in the police reports that the government has, and then turned over in discovery, there is strong evidence of switching. So the court was asking if there was any credibility to what Mr. Faison was saying, and the parties didn't answer accurately. Okay, Ms. Smith, you've reserved a couple minutes rebuttal. Yes. We'll hear the government at this time. Thank you. Okay, thank you. Good morning. Good afternoon. Good afternoon, Judge. May it please the court. Mary Catherine Baumgarten for the United States. This is one of those situations where you sometimes wonder if you should just shut your mouth and sit back down, because the court's asked the questions that are really the thrust of our argument here on behalf of the government. With all these people who've turned out to hear the case, I think it would be disagreeable. No. And I do get that. I wholeheartedly disagree that there was evidence of switching. There's no switching whatsoever. What there is is some ambiguity in some of the reports that gets reconciled and gets explained by the various witnesses at trial. But Judge Raggi hit it square on the head when she asked the question, what would you say differently at sentencing? Stretch the valve. That aptly. Nothing. Nothing can be said because it's harmless error, and after not only the jury's finding, but then as this court knows, at least two of the courts sitting here today are very fluent with this, that the Rule 29 has already been examined by this court on direct appeal. Thereafter, finding sufficient evidence, ordering an amended, the issuance of an amended judgment. I suppose the question that comes from the other side is, even though you make a persuasive argument that there's nothing that can change, it's unlikely that anything . . . extremely unlikely that anything can change. When you have a categorical rule that says you've got to give the defendant thirty-five days with the pre-sentence report, why not give the defendant thirty-five days with the pre-sentence report? The Supreme Court decided a case. I was thinking about it in the last half hour, and I forgot to look up if I have to get the correct name. I think the name was Carlisle, but that might not be right. It was an opinion by Justice Scalia, and it was a case in which the defendant moved to set aside the jury's verdict eight days after the jury's verdict to set it aside for insufficient evidence. The court concluded that there was indeed legally sufficient evidence, so the defendant was constitutionally entitled to have the verdict overturned. The Supreme Court said, the rule says seven days, seven days is not eight days, and the defendant will have to raise that by 2255. Here we have a rule that says thirty-five days, and the defendant said before sentence was imposed, Judge, the rule says you've got to give me thirty-five days, and the judge said, no, I'm going ahead now, thirty days. Is that something that the judge is allowed to do, even if the arguments to change the sentence are extremely, extremely, maybe impossible to succeed, not only unlikely, but impossible? In this particular case, I understand the court's concern.  I'm not going to stand here and say that they met the 32A section, because it wasn't. It was thirty days, and I think it's clear on the record that . . . Why wouldn't the government say to the judge, Judge, the rule says he's got to have thirty-five days. Give him five more days. I think the way that I looked at the, and I wasn't the trial counsel, the way that I looked at the transcript is, you can see that right out of, from the outset, Judge Larimer is inquiring directly of the defendant also, because of the tremendous amount of time that had elapsed, not only from when the court issued its decision in February, but when the mandate comes down, and then there's a status conference in May. The defendant himself concedes, I knew there was an issue with this. I knew it at the time of trial. I also had, initially, part of the reason why he raises the error is because he says he needs the trial transcript to prepare the argument. I think the transcript contains an excellent viewpoint of the argument. I . . . But that only goes to why the error might be deemed harmless. It doesn't excuse the error, or am I misunderstanding your argument? No. I cannot excuse it. I cannot excuse it. I won't stand here and say that it shouldn't have been 35 days, but when we look at it under Rule 52A, it does fall within the parameters of the harmless error, and when you look at it overall, it feeds right back into the inquiry asked of my opposing counsel, which is, what would have happened differently if the additional time had been given? I think when you look at it in its totality, and this court having looked at it once previously, and issued the decision amending the judgment and sending it back for resentencing, it is really an opportunity to seek to get back to the merits of the conviction, which they've already done once. The defendant himself, within the resentencing transcript, talks about the fact that I knew there was the error, I knew it occurred then. It honestly was not that significant to me because I only got a 41-month sentence. When it then became of much greater significance is when I'm looking at 120. In that time frame, he had already been out for a relatively brief period of time. I didn't do the calculations, but then violated and was the subject of a violation, and he was back in jail. It's calculated. That's the way it leaps off the page, and the district court, who was familiar intimately with the circumstances, that's why I think it would be a fair characterization to say that the judge is pressing the defendant to understand what would have occurred, what arguments would you make because he . . . what did you need the additional time for? Really, that's fleshed out in the resentencing. The court really has everything that it needs, I respectfully submit to the court, to make this determination that it is harmless error. The 2016 PSR was very similar to the earlier one, but there were differences. It really related specifically to the appellate history, and what is interesting is that there is ambiguity, there is inconsistency with respect to where some of the drug quantities are found within the apartment where the appellant is found by himself when they execute the search warrant, but there's also a summary, and those are well within the PSR, that actually accurately reflect what the drug weight was. The judge, unfortunately, not only went ahead after thirty days when the defendant was insisting on his right by the rule to have thirty-five, but the judge also said incorrectly, as it turns out, that the two that the pre-sentence report distributed earlier is indistinguishable from the present one, except for the addition of the more recent history, and that was inaccurate. There were also the differences that you were just telling us about. Right, and that's why there was a correction of it. I will not even suggest that this is something that should be repeated, and for those, it would have been the much wiser course to at least given him an extra five days. When you look at the letter that the appellant himself submits to the court in resentencing, very short before, it's curiously undated, which there's a lot of litigation with this particular now appellant. He sends many motions, pro se, many things, raises many issues, but curiously does not raise this precise issue that we're here on right now until just shortly before the sentencing, which I think is probably what lends itself to the court's observation that it might be strategic in doing that, because you can see from the notary signature on that letter, it's notarized June 29th. The court does not receive it until July 8, 2016, and the sentencing proceeding is on July 13, 2016. So I think there is much time spent by the court trying to flesh exactly that out. But to get back squarely to where we stand right now, based on the procedural history before that resentencing on July 13, 2016, it is a mandatory minimum term of 120 months based on the conviction of count one that had been fully litigated already before this court and then sent back down. So when the court looks at it in terms of what the net effect is of the error and what could have changed, nothing. Thank you. Thank you. Let me ask a question, which is, what is the purpose of the government arguing, stick with this procedurally violative sentence? If it's to save time, I mean, it's just generating more issues for him to argue about on habeases and Lord knows what. Why does the government say, stick with this sentence that was imposed in only 30 days instead of 35, rather than just, we don't object to having the trial judge resentencing him. There's no conceivable likelihood that it will come out differently given the mandatory sentence and the court's finding that the jury's verdict was supported by sufficient evidence. But let him have it. When you look at the transcript overall, I really think it was strategy on the appellant's part. The defense strategy markedly shifted from during the course of the trial to adopt the post-conviction and the Rule 29 proceedings. I think that's really where it comes from. I think that it . . . Strategy to do what? I'm sorry. The defense strategy at trial was the cocaine base was in no way mine at all. I just happened to be there. And now, after the fact, after the Rule 29 that was in part successful and the fact that the government didn't cross-appeal all of the conviction, now it's morphed into a new strategy, which is my defense counsel at trial should have approached it not just on that, but also cross-examined vigorously on something else. I think really, at this stage, there would not have been anything different. The government's position is, is that nothing would change. That's why we're opposed to the relief. We were opposed to it at the time. But Judge LaValle, no one's saying that we probably shouldn't have raised it at the time. It would have been given the defendant at least another five years. I'm talking about now. I'm not talking about why didn't you then. I'm talking about now. What's the reason now for defending this rather than saying, let him be resentenced? We do think it's harmless error based on these particular circumstances. What he wants to argue, he'd have to bring in a habeas and pursue that way, but your argument is you would oppose him trying to do it on a remand, and so there's no point. Is that the gist of it? Yes. The now appellant raised that particularly during the course of the sentencing and really always intended to do that anyway. He fully explored not only the thirty-five days and made it very clear that he wasn't agreeing to the waiver of that particular time, but also did some other things to try to maximize his relief via sentencing, sought the assistance . . . At the time that the judge adjourned the sentence for thirty days, the defendant was representing himself at that time? No. Shortly before the resentencing, the defendant had filed a pro se motion or a motion to proceed pro se that the district court denied. He was with the assistance of Mr. Funk at the time who was also his trial counsel, but still was very active in his own defense. For example, another thing that I found, and maybe others have seen this previously, requested that the U.S. Attorney's Office withdraw their filing of the 851 information and sought specifically to have that occur. Right at his resentencing, asked for legal advice from Judge Larimer with regard to what he saw as a potential change in Congress concerning the application of mandatory minimums and that he might get relief. Would it be retroactive? And also specifically asked the government to maintain the evidence. Thank you. Thank you. At this time, we'll hear rebuttal. Thank you. What would be different if the case was remanded is that the judge would not be under the impression that the PSR was exactly the same. The judge was wrong in this resentence that the PSRs were exactly the same. Paragraph 39 and 45 were not included in the original pre-sentence report, and those are the paragraphs that refer to the cocaine that was recovered allegedly in the shorts. Right. The trial theory that they were recovered in the shorts. Just Judge LaValle here. Right, but so what? The judge would say, I was wrong in thinking they were the same, but then what? Well, the reason that the judge thought it was not a problem that Mr. Faison didn't receive the PSR in accordance with Rule 32 was that the PSR was exactly the same and you've had it for years. That was incorrect. So he made a decision based on incorrect information, number one. And number two, now Mr. Faison has the evidence of the switching that he can show to the judge, and the judge was interested in it. This is not a situation where the judge is not interested. He spent several pages talking to Mr. Faison about it and asking the parties about it. So now Mr. Faison does have those reports because I finally got them from Mr. Funk at the end of April. And it's curious to me that the government says that this issue is fully litigated because it's not. The reports were not before the judge. So it's our position that the issue of the switch was not fully litigated. And if there are no further questions, I'll rely on the briefs. Thank you. If there are no further questions, thank you both. We'll reserve decision. That's the only case on calendar. Please adjourn court. Court is adjourned.